# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 1103 | **DATE** | January 18, 2011 |
| **CASE TITLE** | Waddy v. Alternative Behavior Treatment Center et al | | |

**DOCKET ENTRY TEXT:**

The Court GRANTS Defendants' Motions to Dismiss (doc. #47, 82).

■[ For further details see below.]  Docketing to mail notice.

## STATEMENT

Anthonyio Waddy alleges that while he was a participant in a residential treatment program at the Alternative Behavior Treatment Center (ABTC) one of its staff members sexually abused him and other staff members looked the other way. Waddy claims the abuse violated his right to be free from cruel and unusual punishment and that the ABTC staff members were deliberately indifferent to his safety and well being, in violation of 42 U.S.C. § 1983. The staff members move to dismiss, arguing that Waddy cannot state a § 1983 claim against them because they are not state actors.

The allegations of the Amended Complaint are simple and straightforward. Waddy alleges that he participated in a residential treatment program at ABTC's facility in Mundelein, Illinois. He states that his "participation in [the] program was court ordered as part of an agreement between" himself and prosecutors and that he was sent there "in lieu of incarceration." Waddy alleges that if he "refused to participate in [or was removed from] the ABTC program, he would be transferred to an Illinois Department of Corrections facility."

To prevail in a § 1983 action, a plaintiff must prove, among other things, that the defendants acted under color of state law or were state actors. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010). In general, private citizens cannot be considered state actors unless there is a sufficiently close nexus between the state and private conduct such that the action may be fairly attributable to the state itself. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974). In other words, the state must be responsible for the allegedly unlawful actions taken by a private party. *Blum*, 457 U.S. at 1004.

There is no explicit formula to determine when a private actor acts under the color of law. The Supreme Court has, however, identified a range of circumstances that might constitute state action. *Rodriguez v. Plymouth*

# STATEMENT

*Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2007) (discussing tests identified by the Supreme Court under which private action might be attributable to the state). Where a state delegates a task that traditionally is the exclusive prerogative of the state to a private actor, the actor thus performs a public function and acts under the color of law. *Rodriguez*, 577 F.3d at 823-24. For example, the Supreme Court has observed that a physician employed by the state to provide medical services to state prison inmates acts under the color of law for the purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 54(1988). The Court reasoned that the state controls the medical care of inmates to the exclusion of all other sources and thus has an obligation under the Eighth Amendment to provide adequate medical care. *Id.* at 55. Thus, private actors who supply medical care to inmates perform an essential, non-delegable, public function, and are state actors. *See West*, 457 U.S. at 55-57 (discussing the physician's function while working for the state); *Am. Mfr. Mut. Co. v. Sullivan*, 526 U.S. 40, 55 (1999) (observing that *West* was based on the public function test).

The Seventh Circuit has interpreted *West* to apply to health care providers who provide assistance outside of a penal institution. *Rodriguez*, 577 F.3d at 826. The Seventh Circuit observed that *West* instructs courts to examine the relationship among the state, the health care provider, and the prisoner. *Id.* at 826. In this regard, the degree to which the state controls or influences the provider plays a significant role in determining whether the provider's actions are fairly attributable to the state. *Id.* at 827. Likewise, to be liable as the state, the provider must have a direct and not an attenuated relationship with the prisoner-patient. *Id.* at 828. Where a hospital had an ongoing relationship with the state and a specific prison ward in which it treated prisoners brought by the state, its providers could be considered to be state actors. *Id.* at 831 (noting that prisoner's treatment at hospital was tied to the state's responsibility to his overall medical care).

The Defendants argue that *Rodriguez* is not applicable here. In particular, they argue that *Rodriguez* stands for the proposition that private actors who provide medical care in a *custodial environment* may become state actors. The Court agrees. Central to the holding in *Rodriguez* was the fact that the hospital had a custodial ward in which the plaintiff was kept. *Id.* at 831. And although the court did not reach the question of whether the emergency medical technicians who transported the plaintiff to the hospital were state actors, it observed that the plaintiff remained in a custodial situation during transport to the hospital. *Id.* at 830. Here, Waddy makes no allegation that ABTC had any custodial authority over him. Waddy alleges that he accepted a plea agreement and the terms of that agreement allowed him to avoid incarceration. Although Waddy alleges that his participation at ABTC was court ordered, the mere fact that participation is court ordered does not make it custodial. He does not allege that the facility is guarded or that staff at the facility were authorized to prevent him from leaving or even that the facility locked its doors to prevent participants from leaving. Waddy suggests that his participation in the treatment program at ABTC was custodial because if he failed to complete it, he would be remanded to the state department of corrections. Again, the mere fact that Waddy faced incarceration if he failed to comply with treatment does not make it custodial. Waddy does not allege that the staff at ABTC had the authority to transfer him directly to an IDOC facility. As Defendants point out, plea agreements that result in probation or supervision may require participation in drug or alcohol therapy and that failure to comply with the terms of the court order may result in a revocation of probation or supervision and a return to a custodial environment. Waddy simply fails to make any allegations from which it is reasonable to infer that he was effectively a prisoner at ABTC or otherwise in a custodial environment such that its staff could be considered state actors, and while such allegations may be consistent with his Amended Complaint, the Court would necessarily speculate to draw such inferences, which is prohibited under the guidelines set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Because the Defendants are not state actors, Waddy has failed to state a § 1983 claim against them. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Count II. Waddy also brings Count I, naming the perpetrator of the alleged abuse, under § 1983. The perpetrator has also filed a motion, that has not yet been fully briefed, but is based upon the same principle as this motion — that he is not a state actor. Because Count I suffers from the same defect as Count II, and the Court GRANTS Defendant's Motion to Dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(6). On a final note, the Court commends the counsel for their attention to Waddy's claims. Although the Court ultimately holds that Waddy cannot transform his state claims into a constitutional torts, Waddy makes serious allegations, and counsels' diligence in responding to the Defendants' motion assisted the Court in arriving at a reasoned decision under the law.

*[Signature: Wm. J. Hibbler]*